IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| VERONICA RAMIREZ, INDIVIDUALLY, § <br> AND AS REPRESENTATIVE OF THE § <br> THE ESTATE OF MARTIN GOMEZ § <br> ARELLANO; AND AS NEXT FRIEND § <br> OF AXEL ADRIAN GOMEZ, A MINOR, § <br> BLANCA GOMEZ ARELLANO § <br> INDIVIDUALLY AND AS § <br> REPRESENTATIVE OF THE ESTATE § <br> OF MARTIN GOMEZ ARELLANO § <br> *Plaintiff,* § <br> § <br> V. § <br> § <br> RIGOBERTO POMPA GARCIA, § <br> GREGORIO VALDEZ and JUAN § <br> ENRIQUE ESCOBEDO MORENO § <br> UNITED STATES OF AMERICA, § <br> AND PACCAR, INC., § <br> *Defendant.* § | | United States Courts <br> Southern District of Texas <br> FILED <br><br> JUN 2 0 2019 <br><br> David J. Bradley, Clerk of Court <br><br><br><br> CIVIL ACTION NO. 2:18-CV-00446 |

**PLAINTIFF, VERONICA RAMIREZ'S RESPONSE IN OPPOSITION TO DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS ALL CLAIMS IN FIRST AMENDED COMPLAINT**

Plaintiffs VERONICA RAMIREZ, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF MARTIN GOMEZ ARELLANO AND AS NEXT FRIEND OF AXEL ADRIAN GOMEZ, A MINOR, by and through her attorney of record and files this, her Response in Opposition to Defendant United States of America's Motion to Dismiss All Claims in her First Amended Complaint for Lack of Jurisdiction.

### I. BACKGROUND

**A. Factual Background**

On October 3, 2017, Martin Gomez Arellano was traveling northbound on Hwy. 281, locked under the bed in the sleeper berth section of the Kenworth truck driven by Juan Enrique

1

Escobedo Moreno and owned by Rigoberto Pompa Garcia. Upon arriving at the Falfurrias inspection station, CBP agents moved the subject truck to secondary inspection wherein they found Roberto Rico-Duran inside a closet in the sleeper berth section of the Kenworth truck. After arresting the driver and Roberto Rico-Duran, the CBP agents sent the trucks to a storage yard in Falfurrias, Texas. On October 6, 2018, personnel at the storage yard detected liquid and a foul odor coming from the Kenworth truck. Upon further investigation, Martin Gomez Arellano body was found under the bed in the Kenworth truck.

**B.    Procedural Background**

Plaintiff filed her Plaintiffs' Original Petition in the 92nd District Court in Hidalgo County. Defendant, Juan Enrique Escobedo Moreno, joined the United States of America (USA) as a Defendant and the USA thereafter removed the action. On May 13, 2019, Plaintiff filed her First Amended Complaint alleging multiple Federal Tort Claims Act (FTCA) claims against the USA. The USA then filed the Motion to Dismiss at issue herein.

**II.    BURDEN OF PROOF AND STANDARD OF REVIEW**

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). The court may find that subject matter jurisdiction is lacking based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Willoughby v. United States ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013).

### III. ARGUMENT & AUTHORITIES

#### A. FTCA Waives Immunity for Claims Against United States

The Federal Tort Claims Act (FTCA) provides that the Unites States shall be liable "in the same manner and to the same extent as a private individual under like circumstances". 28 U.S.C. §2674. This waiver of immunity for acts of the United States and its personnel permits lawsuits and the award of damages against the United States. *Id.*

#### B. FTCA Exceptions to Waiver of Immunity do not Apply to Gomez Arellano's Death

##### 1. The Customs Duty Exception Applies Only While Detention Is Ongoing

The plain language of 28 U.S.C. §2680(c) specifically refers only to claims arising from the "detention" of goods, merchandise or other property.

> Any claim arising in respect to the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs of excise or any other law enforcement officer....

28 U.S.C. §2680 (c).

The claims arising from these detentions will be subject to the provisions of §2680(c) only when such detentions are ongoing. In assessing the plain meaning of the statue, if Congress meant to expand such exception to immunity beyond the time that a detention is occurring it could easily has done so in the text of the statute, however, it did not.

Courts have limited the scope of §2680 (c) to claims that arise while the detention is ongoing both in time and geography. In *Davila v. United States*, the Fifth Circuit Court of Appeals analyzed the detention of a vehicle and several individuals who then brought suit under the FTCA. *Davila v. United States*, 713 F.3d 248 (5th Cir. 2013). In *Davila*, three individuals, Davila, Mata and Tocho were detained while their vehicle was being searched. After some time waiting for the search to be completed, one of the individuals, Tocho, left the checkpoint where the search was

3

being conducted and a pursuit by law enforcement ensued. During Tocho's pursuit away from the checkpoint, Davila and Mata were taken to a county jail at which time they allege physical mistreatment by the checkpoint officers. The Fifth Circuit held that the FTCA claims brought once the search was no longer being conducted and when the vehicle was away from the checkpoint were not barred by the customs duty exception. *Id* at 256, 257. It held that in order to arise from a detention, the acts giving rise to the claims must occur at the time and place of detention.

In the present case, the claims brought by the Plaintiffs arise after the search was conducted and away from the checkpoint. Martin Gomez Arellano was trapped in the Kenworth truck in a storage yard away from the actual checkpoint and for days after the checkpoint search had concluded. In light of the Fifth Circuit's holding in *Davila*, the present claims arose after the search and away from the checkpoint, and are therefore not subject to the custom duty exception in §2680(c).

### 2. The Detention and Search Had Ended and the Customs Duty Exception No Longer Applied

Federal jurisprudence has always maintained a critical distinction between a "detention" and "seizure" regarding both person and property. The law maintains this critical distinction in defining the contours of the exceptions to immunity in §2680(c).

The distinction between "detention" and "seizure" is set forth by the 5th circuit in *Chapa v. DOJ. Chapa v. DOJ*, 339 F.3d 388 (5th Cir. 2003). "Detention" is a period of temporary custody or delay, and not a "seizure," which is the act of taking possession of property...for a violation of law." *Id* at 390, 391. The *Chapa* Court determined that the Bureau of Prisons took only temporary custody of the prisoner petitioner's property when performing an inspection and inventory prior to

4

shipping the prisoner's property. Based on that temporary custody and delay, there was a detention for purposes of the statute, thereby precluding the petitioner's FTCA claims. *Chapa* at 391.

In *Kurinsky v. United States*, the Sixth Circuit Court of Appeals conducted an in depth review of the distinction between "detention" and "seizure" in the context of the §2680(c) exception. *Kurinsky v. United States*, 33 F.3d 594, 597-598 (6th Cir. 1994). The Court held that Congress intended to exclude claims arising from property seizures from the detention of goods exception. The Court determined that "detention" is generally associated with a period of temporary custody or delay and not an adversarial interest as far as ownership. *Kurinsky* at 597. Alternatively, a "seizure" constitutes taking possession of property for a violation of law. Once seized, there is no intention to return those goods and the possession then becomes adversarial. *Id.* A review of the legislative history by the Court supported its determination in that no mention of seizure was noted anywhere leading up to the passage of §2680(c). *Id* at 598. The *Kurinsky* Court determined that Congress did not intend to include damages arising out of "seizures" of property in the §2680(c) exception, and if it had intended so, it would have included the critical and meaningful term "seizure" in that portion of the statute. *Id.*

Notably, the Supreme Court overturned part of the holding of *Kurinsky*, however, only did so on the issue of the scope of the "law enforcement officers" language. *Ali v. Bureau of Prisons*, 552 U.S. 214 (2008). In *Ali*, the Supreme Court broadened the interpretation of "law enforcement officers" to cover all law enforcement officers, not just customs officers for purposes of the §2680(c) exception. The "seizure" versus "detention" distinction remains.

The facts in this case present a clear distinction between the "detention" of the Kenworth truck and the "seizure" of the Kenworth truck. Upon arriving at the Falfurrias checkpoint, Border Patrol agents detain all vehicles for a brief inspection of persons and property. These detentions

5

apply to all vehicles and occur to various degrees depending on the persons and the property involved. Naturally, a large tractor-trailer combination will require a more involved detention than a small passenger vehicle with only one occupant.

The Border Patrol agents began by detaining the Kenworth truck for inspection. Agents questioned the driver and inspected the interior of the truck, as is done on a daily basis with countless other vehicles at the checkpoint. During this inspection, however, the agents found Mr. Roberto Rico-Duran, inside of a closet in the sleeper portion of the Kenworth truck. Upon finding Mr. Rico Duran, the Border Patrol agents arrested the driver and Mr. Rico Duran, and thereupon transformed the "detention" of the persons and property into a "seizure". At this critical juncture, where the Kenworth truck was taken from a "detention" to a "seizure", the detention exception in §2680(c) ceased to apply to the acts and omissions giving rise to the Plaintiffs' FTCA claims and immunity was thereafter waived. Due to this critical and longstanding distinction in our law and the very clear term used in the statute, §2680(c) exception to immunity does not apply to Mr. Gomez Arellano's death.

### 3. Customs Duty Exception Applies to Goods, Merchandise, or Other Property – Not People

In addition, the customs duty exception applies to the "detention" of goods, not people. *Rivera v. United States*, has a two-fold application to the analysis of the case at bar. *Rivera v. United States*, 907 F. Supp. 1027 (W.D. Tex. 1995). In *Rivera*, the Rivera's arrived at the El Paso del Norte port of entry and were stopped by Customs agents. The Rivera's showed the agents their documents, and the agents searched their car. Mrs. Rivera and one of the agents became involved in a physical altercation during the search, and the Rivera's later brought FTCA claims including negligence, intentional infliction of emotional distress, and use of excessive force. The court held

that section §2680(c) does not bar an intentional tort claim that arises out of an arrest of a person; however, the court ultimately found that the Customs agent did not arrest Mrs. Rivera. *Rivera* at 1030. The court concluded that there was no subject-matter jurisdiction to adjudicate the FTCA claims pursuant to Rule 12(b)(1) because there was no arrest and so immunity had not been waived. *Id.*

In setting forth its analysis, the *Rivera* court states that "§2680(c) does not bar an intentional tort claim arising out of an arrest by a Customs agent as the exception applies only to the detention of goods and merchandise, not persons." *Rivera* at 1030. This distinction applies to Mr. Gomez Arellano's death in that Plaintiffs' FTCA claims arise only out of Mr. Gomez Arellano the person and are do not relate to the detention of goods and merchandise. No claims are being brought for any damages, related to "goods, merchandise, or other property", which is what "§2680(c) precludes.

Moreover, the distinction in *Rivera* highlights the significance of the "detention" versus "seizure" distinction. In the *Rivera* case, the Court determined that the government specifically waived immunity once an arrest or seizure has taken place. *Id.* It is important to note the repeated distinctions made by Congress between "detentions" and "seizures" when defining the scope of governmental immunity and waiver. Unlike *Rivera*, wherein no arrest or seizure took place, the present case involves a clear seizure of both property and persons thereby waiving immunity.

### 4. Legislative Intent and Objectives for Customs Duty Exception Shows No Intent to Preclude Plaintiffs' Claims

In *Kosak v. United States*, the United States Supreme Court extensively reviewed the legislative intent and the objectives of Congress to issue its opinion regarding §2680(c). This review expounded on the rationale and concerns giving rise to the very specific exception to the waiver of immunity in §2680(c).

7

> The Government's vulnerability to fraudulent claims would be especially great in a case in which the Customs Service took custody of the goods from a shipper rather than from the owner. The shipper would contend that it exercised due care in the handling of the goods. The owner would demonstrate that he received the goods in damaged condition. In the absence of an extensive system for accounting for the movements and treatment of property in its custody, the Customs Service would be hard pressed to establish that its employees were not at fault. We do not suggest that such a dilemma would automatically give rise to liability on the part of the United States; that of course would depend upon the substance of the pertinent state tort law. See 28 U. S. C. §§1346(b), 2674. But uneasiness at the prospect of such scenarios may have influenced Congress when it carved out this exception to the Tort Claims Act.

*Kosak v. United States*, 465 U.S. 848, 859 n.19, 104 S. Ct. 1519, 1526 (1984).

The main purposes of the exception were extracted from Judge Holtzoff's report in which his draft bill was contained. It was never introduced to public record. However, the importance of determining legislative intent remains due to several important considerations.

> Our purpose in looking to the legislative history is merely to ensure that our construction is not undercut by any indication that Congress meant the exception to be read more narrowly. Because of the sparseness of the evidence regarding the purpose of §2680(c) itself, see *supra*, at 855-858, we consider it advisable to consider Congress' more general objectives in excluding certain kinds of claims from the broad waiver of sovereign immunity effected by the Tort Claims Act. Because we find that our reading of §2680(c) is consistent with those objectives, we see no need to throw our analytical net any wider.

*Kosak v. United States*, 465 U.S. 848, 858 n.16, 104 S. Ct. 1519, 1525 (1984).

Noting the significance of legislative intent regarding §2680(c) attributed by the United States Supreme Court, it is worth scrutinizing the legislative intent in *Kurinsky. See supra*. The focus of Congressional concerns outlined in the legislative history clearly emphasizes fear of endless lawsuits arising from the countless detentions that occur at our border crossings and other checkpoints and similar situations. The drafters of §2680(c) clearly envisioned an exception to the immunity waiver that would prevent every person subjected to such a detention when entering

the country or a brief stop at a checkpoint from bringing claims because of some complaint regarding how their property was treated during such detention. *See generally, Kosak.* However, just as notable is that in all the legislative history the term "seizure" is conspicuously absent. *Kurinsky* at 597. It cannot be taken as an accident that "detention" was used instead of "seizure" for this provision of §2680(c), particularly given the term seizure is used in other places in that very same section to once again waive immunity. §2680(c)(1-4).

> (1) The property was seized for the purpose of forfeiture under any provision of Federal law....

28 U.S.C. §2680(c)(1-4).

This very deliberate use of these two significant and critical terms used in the very same section, but with completely opposite effects regarding waiver of immunity, simply cannot be dismissed. "Detention" is used when delineating the exception to waiver of immunity and "seizure" is used to create an exception to the exception. Clearly, Congress was concerned about potential claims arising from detentions, however, when such detentions then transform into seizures, Congress intended that the statute give claimants the right to pursue actions against the government related to those seizures. The drafting and reading of the statute creates this well-defined distinction which in the present case allows the Plaintiffs to bring their FTCA claims.

### C. FTCA Specifically Waives Immunity for Acts Arising from Forfeiture and Intentional Acts

#### 1. Forfeiture Immunity Waiver

As mentioned above, 28 U.S.C. §2680(c)(1-4) waives immuinity for claims arising from forfeitures.

> (1) [t]he property was seized for the purpose of forfeiture under any provision of Federal law providing for the forefeiture of property other than as a sentence imposed upon conviction of a criminal offense;

> (2) the interest of the claimiant was not forfeited;
>
> (3) the interest of the claimant was not remitted or mitigated (if the property was subject to forefeiture); and
>
> (4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject o forfeiture under a Fedreal criminal forfeiture law.

28 U.S.C. §2680(c)(1-4).

Immunity is waived to the extent of the re-waiver of immunity in subsections (1-4). In this regard, the Plaintiffs may bring an FTCA claim pursuant to subsections (1-4), despite the exceptions to the waiver of immunity in §2680(c). These subsections carve out a waiver of immunity for the Plaintiffs and certainly present an avenue by which this Court has subject matter and jurisdiction. In fact, not only is there an avenue to maintain jurisdiction, but all elements of this exception are clearly met in this case. After being seized, the Kenworth truck was forfeited. The interests of the claimants, Mr. Gomez Arellano and his beneficiaries, including Ms. Ramirez, were not forfeited. No interest of Mr. Gomez Arellano or his beneficiaries, including Ms. Ramirez, were ever remitted. Finally, neither Mr. Gomez Arellano or Ms. Ramirez were ever convicted of a crime. None of these elements are dispute. The Plaintiffs meet every element of subsections (1-4) and are therefore entitled to bring their FTCA claims against the government.

Prior to filing this response, counsel for Plaintiffs requested information regarding the disposition of the Kenworth truck in question from government's counsel. Counsel for the government responded in writing that the Kenworth truck was, in fact, forfeited and destroyed. Counsel for Plaintiffs envisions counsel for the government will eventually stipulate to those two salient facts for the purposes of this Court's evaluation of the claims as they relate to these subsections. However, in the unlikely event that the government does not so stipulate and this Court believes it needs these facts to resolve the USA's Motion to Dismiss, counsel for Plaintiffs

would intend on moving the Court to grant time to conduct the discovery necessary to prove up these limited facts and supplement this response, if necessary.

The provisions in §2680(c)(1-4) are in line with the legislative purpose, and the analysis in cases like *Chapa*, by giving more protection to those claimants that are subject to the greater governmental intrusion of a "seizure" by waiving immunity. If the Government's position were correct, then practically all FTCA claims relating to torts committed during interactions with CBP agents would be barred and that is not the plain meaning or intent of §2680(c). Claimants subjected to "seizure" level acts by the government, like the Plaintiffs in the present case, may bring claims for actions arising from those seizures by the clear terms of the statute.

### 2. Intentional Torts are Permitted by §2680(h) and Are Not Barred by the Customs Duty Exception

Finally, Plaintiffs rights arising from intentional torts committed by government agents by way of assault, battery, false imprisonment, false arrest, malicious prosecution, and abuse of process are actionable pursuant to the waiver of immunity in §2680(h). The present case contains assault and battery and false imprisonment allegations that would fall into this category of claims. At the very least, this Court should allow these claims to proceed.

### V. PRAYER

Plaintiffs pray that this Court deny the USA's Motion to Dismiss pursuant to Rule 12(b) and for such other and further relief to which they may be justly entitled.

Respectfully submitted,

BY:       /s/ Luis Cardenas
        Luis Cardenas
        Attorney-In-Charge
        Federal ID No. 21657
        State Bar No. 24001837
        **ESCOBEDO & CARDENAS, L.L.P.**
        1602 Dulcinea
        Edinburg, Texas 78539
        Telephone: (956) 630-2222
        Telecopier: (956) 630-2223

        **ATTORNEY-IN-CHARGE FOR PLAINTIFFS**

*Of counsel:*
**ESCOBEDO & CARDENAS, L.L.P.**
1602 Dulcinea
Edinburg, Texas 78539
Telephone: (956) 630-2222
Telecopier: (956) 630-2223

## CERTIFICATE OF SERVICE

 I, Luis M. Cardenas, do hereby certify that on the 19th day of June, 2019, a copy of the foregoing Plaintiff's Response in Opposition to Defendant United States of America's Motion to Dismiss Plaintiff's First Amended Complaint was served by Notification of Electronic Filing upon all attorneys of record.

Larry D. Warren
NAMAN HOWELL SMITH & LEE, PLLC
Union Square
1000 Reunion Place, Suite 600
San Antonio, Texas 78217
Fax: (210) 785-2950
Email: lwarren@namanhowell.com

**Attorney for Defendants Rigoberto Pompa Garcia and Gregorio Valdez**

Orlando Jimenez
ATTORNEY AT LAW
320 West McIntyre Street
Edinburg, Texas 78541 ~3301
Fax: (956) 270-4328
Email: hillanddjimenez@yahoo.com

**Attorney for Defendants Rigoberto Pompa Garcia and Gregorio Valdez**

Nik A. Mimari
PLUNKETT, GRIESENBECK & MIMARI, INC.
Catholic Life Building
1635 N. E. Loop 41 0, Suite 900
San Antonio, Texas 78209
Fax: (21 0) 734 0379
Email: nmimari@pg-law.com
Email: dhernandez@pg-law.com

**Attorney for Defendant Juan Enrique Escobedo Moreno**

Ryan Patrick
Lance Duke
ASSISTANT UNITED STATES ATTORNEY
Southern District of Texas No. 21949
800 N. Shoreline Blvd., Suite 500
Corpus Christi, Texas 78401
Email: lance.duke@usdoj.gov
Email: CaseView.ECF@usdoj.gov
Email: christiane.troutman@usdoj.gov

**Attorneys for Unites States of American**

                    /s/ Luis Cardenas
                    Luis Cardenas